E. B. Fogg, Special J.,
delivered the opinion of the court.
This is an action of assumpsit brought by Otis Pettee against the Tennessee Manufacturing Company,' for a balance claimed to be due him for certain machinery furnished them for their cotton and woollen mills in Lebanon. There are three counts in the declaration, one on a special contract in writing, made the 8th day of September, 1847, whereby the plaintiff agreed to furnish the defendants with certain articles of machinery specified in the agreement, to be delivered, one-third on or *383 before the first day of February, one-third on or before the first of March, and the remainder on or before the first of April, 1848, and when delivered the defendants were to pay the prices stipulated in the agreement, in a check at five days’ sight drawn on Philadelphia, on receiving notice of the shipment of the same from Boston. In this count of the declaration, it is averred that the machinery was delivered according to contract, and that the value thereof was thirty-seven thousand, one hundred and sixty-six dollars and forty-five cents, of which only twenty-eight thousand' five hundred dollars had been paid to him, leaving a balance due him of eight thousand six hundred and sixty-six dollars and forty-five cents, which the defendants refused to pay.
The second count is for machinery sold and delivered, and for materials, work, and labor, &c., according to the account annexed, in which a balance was claimed by plaintiff on the eighteenth of May, 1850, of nine thousand one hundred and forty-three dollars and ten cents. The third count was for money paid, laid out, and expended.
The pleas were non-assumpsit and payment, with leave to give any special matter in evidence. At January Term, 1853, the jury found a verdict in favor of the plaintiff, for eight thousand dollars.
The machinery was not delivered according to contract, but appears to have been delivered from the 26th of May, 1848, to the 14th of May, 1849, and was received by defendants in parcels, and payments were made by them at different periods from 31st of May, 1848, to April 25th, 1849, amounting in the whole to twenty-eight thousand five hundred dollars.
*384 There was proof tending to show that if the machinery had been delivered agreeably to the special contract, that the mills would have commenced operations in the spring of 1848, and that the profits of the mill might probably have been to a large amount, and that the capital stock was called in from the stockholders U2Don the faith of the compliance with the contract by the plaintiff, much sooner than it otherwise would have been, and that large sums were lost in the interest on their capital invested. It was also proved that expenses to the amount of upwards of five hundred dollars, had been incurred by the company in sending a special messenger to Massachusetts, where the plaintiff resided, and where the machinery was made, for the purpose of hastening the plaintiff in the delivery of the machinery. It appears, however, unnecessary to state the proof, as the cause has been argued in this court upon exceptions taken to a portion of the charge of the honorable circuit judge to the jury, and a refusal to grant a new trial for the error in the charge.
The court below charged the jury, that the plaintiff could not recover ou the first count, in the declaration, upon the special contract, because it was conceded that the machinery had not been delivered according to the terms of his contract. That upon the other counts in the declaration, he could recover the reasonable value of the machinery or benefit conferred, as the same had been received and enjoyed by the defendants. To this part of the charge all objections were waived.
The court also instructed the jury as follows: “ It is insisted strenuously for the defendants, that upon the whole case they have a right to recoup (as the phrase *385 is) tbe plaintiffs recovery to tbe extent they sustained damage by reason- of tbe failure of tbe plaintiff to comply witb bis contract, and they insist first, that they can abate tbe recovery so much as they could bave made by running tbe ■ factory during tbe time they alleged they were delayed by the failure to ship tbe machinery; and secondly, at all events, to tbe extent of tbe capital paid in and drawing interest. But tbe court is of opinion that to enable tbe defendant to maintain bis position, tbe claims for recoupment ought to be such that tbe defendants could maintain a cross action for it against tbe plaintiff. Such cross action will not lie for “ delay in business ” or for speculative profits. Tbe consequence is that in tbe opinion of tbe court, tbe claim for recoupment of damages insisted on, falls within .the principle announced, and which having been so held by tbe supreme court, this court feels bound to declare as tbe law, and to bold as furnishing no such defense as is made. If,- therefore, tbe proof shows that tbe plaintiff failed to fulfill tbe special contract, if such failure caused a delay in business or delay in starting tbe operations of the factory, and if tbe profits they might bave made by running it, were speculative and not capable of being arrived at or computed witb reasonable certainty and precision, then tbe claim for recoupment or reduction of the recovery of tbe plaintiff cannot apply to that case.”
To this part of tbe charge, tbe defendants excepted.
It is settled as tbe law of this State, by tbe case of Porter vs. Woods, Stacker & Co., 3 Humph. 56, that after tbe abandonment of a special agreement, compensation for partial performance may be recovered, equal to and limited by tbe value and extent of the benefit- conferred *386 Therefore, the defendant is entitled to abate the recovery of the plaintiff by the damages he has sustained on account of the non-performance of the plaintiff’s portion of the agreement. The plaintiff being entitled to recover for valuable materials furnished or beneficial services rendered, and only to the extent of the benefit conferred on the defendants, the latter must be entitled in abatement, and in ascertaining the extent of such benefit, to such damages as in a cross action he ought to recover for the non-performance by the other of his portion of the agreement.
In 5 Humph., 586, Crouch vs. Miller, it is decided that recoupment of damages is allowed the defendant in cases where the plaintiff, who -has only partially performed his portion of the contract, comes into court asking compensation for such partial performance.
In 8 Humph., 678, Fanning vs. Vanhook, it is said by the court that the doctrine of recoupment is applicable to cases where there has been a special contract, which has been partially executed, but not according to its terms; then the defendant is liable to the plaintiff, not upon the special contract which he has failed to execute, but upon an indebitatus assumpsit for so much as the defendant may be found ex eguo et bono, to pay for the partially or defectively executed contract, and in such case, in order to ascertain what the defendant does, ex eguo et bono really owe, he shall be allowed by way of recoupment, such damages as he has sustained by reason of the non-performance of the contract as it was entered into by the plaintiff, and which he could recover by a cross ' action.
*387 These principles baying been settled by our highest judicial tribunals, it seems useless to discuss the question which has been treated at large by Mr. Sedgwick in his learned treatise on the measure of damages; C. 17, p. 456 to 486, where all the cases_haye been collected, and 'where he expresses the opinion, that while recoupment originally merely implied a deduction from the plaintiff’s demand arising from payment in part or in whole, or from recovery or some analogous fact, it is now understood to embrace counter-claim's of the defendant, and to be in short a kind, of irregular and unliquidated set off which has crept in notwithstanding the vigorous terms of the statute of set off. The doctrines asserted by him to have been adopted in the courts of New-Yorlc and Massachusetts, seem to be approved by the supreme court in Tennessee. ' '
It follows from these principles, that the defendants could give in evidence in. abatement of the sum sought to be recovered by the plaintiff, whatever damages they could have recovered in a -cross action against him. When we look to the cases and elementary writers, we find the general rules laid down, that the damage to be recovered must always be the natural and proximate consequence of the act complained of. Greenl. Ev., vol. 2, p.210. Damages for breaches of contract are only those which are incidental .to and directly caused by the breach, and may be reasonably supposed to have entered into the contemplation of the parties, and not speculative profits, or accidental or consequential losses; 2 Kent’s Com., 480 note. Although this is a general rule in its application to particular cases, there is the most serious and distressing difficulty, and the legal and natural con *388 sequence of an act or tbe natural and proximate consequence cannot easily be discerned. It must be left for the application to causes as may arise by sound and discriminating minds. There are, however, some cases which show that an allowance of damages, upon the basis of a calculation of profits, would be inadmissible. Such profits are too speculative and uncertain to make them the measure of damages. In the case of Masterton vs. The Mayor of Brooklyn, 7 Hill, 73, Chief Justice Nelson says, “It is a very easy matter to figure out large profits upon paper, but it will be found that these, in a great majority of cases, become seriously reduced when subjected, to the contingencies and hazards incident to actual performance.” There is a great difference between the actual test of experience and speculative estimates of profits. Judge Story, in the case of the schooner Lively, 1 Gallison’s R., p. 314, says, “ an allowance of damages upon the basis of a calculation of profits is inadmissible. The rule would be in the highest degree unfavorable to the interests of the community. The subject would be involved in utter uncertainty. It would be a calculation upon conjectures and not upon - facts.”
In the case of Blanchard vs. Ely, 4 Wendell, p., 342, an action was brought for the price of a steamboat. The defendant proved that part of the machinery was unsound and other imperfections existed, by which considerable delay was caused, and claimed to deduct from the contract price of the boat, not only the sum necessary to remedy the actual defects, but also the loss of profits upon the trips that might have been run during the time the vessel was delayed on account of the imperfec *389 tions in tbe construction, having proved that each trip would bring one hundred dpllars nett profits. But it was disallowed. This last case is referred to and adopted as law by our supreme court in the case 'in 3 Humph., 62, before cited, and our court there' says, that in a cross action the defendant could not recover damages for delay in business for speculative profits, for expenses incurred in various trips to Cumberland Furnace.
In regard to the loss of interest on capital stock called in, which would not have been paid had not the defendants believed that plaintiff would have complied with his contract, we do not see in the records any satisfactory proof that such loss of interest had been sustained by the corporation, and if there were proof, we do not think that such losses would fairly be considered as having been in the contemplation of the parties at the time the agreement was entered into. If speculative profits or losses of interest upon capital are to be taken into view in the assessment of damages they should be expressly stipulated for in the contract itself. The rule would otherwise be too vague and indefinite, and would have no reference to the particular thing which is the object of the contract, and unlimited discretion would be left to the jury. The jury in’ this cause have allowed no interest to the plaintiff for nearly three years, and have deducted near seven hundred dollars from the amount of his claim, which they had undoubted right to do.
The capital stock of the corporation was invested in lands, slaves, buildings, machinery and other property, as shown by the record, and there is no proof that any large sums of money belonging to the corporation lay *390 idle or were uninvested, or for wbat time, or on what any interest lost could be calculated by the jury. It is probable the loss of interest was to the individual stockholders, and not to the corporation itself. Upon the whole, we think there is no error in the record, and the judgment will be affirmed.